And the last case on our docket for this morning is agenda number four, number 129585, People of the State of Illinois v. Alvin Brown. Counsel for the appellant. May it please the court. Counsel. My name is Christopher McCoy from the Office of State Appellate Defender, and I represent Mr. Alvin Brown. Your Honors, there are two issues presented in this case. First, whether Mr. Brown had the right to elect under the amended Class X sentencing provision. And second, whether post-plea counsel complied with his duties under Rule 604D. On the first issue, I'd like to initially dispense with the sub-issues of forfeiture and invited error, because they're ultimately irrelevant to this court's disposition of this case. Because we raised an ineffective assistance of counsel argument, this court will have to address the merits of the claim in order to determine if counsel performed efficiently. So even if this court finds that there was invited error, it still must address the ultimate question in this case, which is, does an amended sentencing provision apply when it becomes effective after the date of sentencing, but prior to the denial of the motion to reconsider sentence? And it should, because there are ongoing proceedings in the trial court. This case would be different if it were pending on appeal only when the amendment became effective. If that were the case, precedent is clear, Mr. Brown would not have the right to elect. But the key difference here are those ongoing proceedings in the trial court. As this court stated in People v. Hunter, an amended statute applies to, quote, a case in which the trial court proceedings had begun under the old statute, but had not yet concluded. And that's what we have here. The ball is still in play, so to speak. The state has not been able to cite any cases where this court has not applied a statutory amendment in similar circumstances to the ones presented here today. The state, we acknowledge, relies heavily on language from People v. Lyle, a 1945 decision from this court. However, Lyle does not control the outcome here because there was no indication in that case that the amendment that was there became effective while that case had ongoing proceedings in the trial court. So there's no indication Lyle addressed the issue that's presented to your honors today. In fact, what you see in Lyle is really one sentence that the state relies on that indicates sentences the operative date in terms of amendments. There is no underlying reasoning given in Lyle. There is no statutory interpretation attempting to be done in Lyle. So not only is it not controlling, your honors should not find that case persuasive either. And so instead, this court should look to section four of the statute on statutes. The state contends that the word judgment in section four must be construed in the same way that this court construed final judgment in People v. Walz. However, like Lyle, when you sort of peel back the layers of the onion, Walz doesn't support the state's case nearly as strongly as they indicate. Counsel, here didn't the legislature indicate the effective date of the statute? Yes, but that doesn't... And so does the section four even apply in this instance? Yes, section four still applies. So there was an effective date for this amendment. However... And where did that fall in relation to the pending motion to reconsider? So it was effective when the motion to reconsider was heard. When was the defendant sentenced? When was that? So the defendant was sentenced in November 2019. And the effective date of the statute was July 1st of 21, is that correct? Correct. And then the second motion to reconsider was denied in May of 2022. So there's no dispute that the statute was not in effect at the original sentencing hearing. It was in effect at the time that the motion to reconsider sentence was denied ultimately in this case. And so when a person is sentenced, is that a judgment? Is judgment entered at that time when a person is sentenced? It is a judgment. Our contention is that judgment in section four should not only be limited to the sentence. And what this brings me to my motion to cite additional authority, specifically 730 ILCS 5-5-4.5-50D. That's the subsection on motions to reconsider sentence. And that held that if a motion to reconsider sentence is filed, then, quote, for purposes of perfecting an appeal, a final judgment is not considered to have been entered until the motion to reduce sentence has been decided by order entered by the trial court. So in that case, the legislature used judgment to mean the denial of the motion to reconsider sentence. So at the very least, this creates an ambiguity, which under the rule of lenity should be construed in the defendant's favor. And judgment also has to be construed in light of the context of the whole of section four. Specifically, the preceding sentence in section four says that, quote, the proceedings thereafter shall conform so far as practicable to the laws enforced at the time of such proceedings. So here we have a proceeding that can conform to the new law. The motion to reconsider sentence asked the court to consider the propriety of the sentence. If Mr. Brown had the right to elect, it would not necessitate a new proceeding. It would not ask to undo something that could not already be undone. By virtue of the motion to reconsider sentence being pending, the court had the ability to decrease the sentence. And one of the purposes of a motion to reconsider sentence is to bring the trial court's attention to changes in the law, such as what we have in this case. Indeed, if Mr. Brown had the right to elect, how the motion to reconsider sentence hearing would have played out would not have been very different. The trial judge would not have had to held an entirely new sentencing proceeding, would not have had to recall the witnesses, redo the PSI. The court could have simply taken the existing set of facts established at the original sentencing hearing and applied those to the new sentencing range and then decided if the sentence needed to be decreased from what was originally imposed. This also ties in to the notion of absurd results that the second district highlighted in Pupil v. Spears. And why the state's position creates absurd results is not just because there's some line drawing and one group of defendants sentenced before the date of the amendment don't get the benefit of the amendment. And another group of defendants sentenced later do get the benefit of the amendment. That's not the absurd results. That's not what we're claiming. What's absurd about the state's position is it's the same defendant at the same hearing that was already going to occur where essentially the same considerations are being made. However, a different law is going to be applied depending on whether or not the motion to reconsider sentence is granted or denied. Counsel in Spears, did the court talk about the judgment date being the date of sentencing? Well, so in Spears, the second district cited Feldman, which of course was overruled by Pupil v. Walls. And so that part of Spears was incorrect. But your answer is yes, they did say it was the date of sentencing. So the second district said that they were focused on the holding of Pupil v. Feldman that said the judgment date was the date of the denial of the motion to whatever the post-plea motion was. Obviously, that was again overruled by Walls. However, that really wasn't the core of the holding of Spears. And even when the court was talking about Feldman and citing Feldman, it was really focused on this idea of that there's still ongoing proceedings in the trial court. And that because there was a pending motion to reconsider sentence, the trial court proceedings had not concluded. And I believe Spears also cited Hunter on that point. So yes, Spears cited law, which has subsequently been overruled, but the underlying reasoning still holds. And again, when you kind of stop to think about it, too, the state's theory gets hard to apply in practice. Just to take an example of this case. Say, for example, that at the second motion to reconsider a sentence hearing that Judge Tobin decided to decrease the sentence from nine years to seven years, for example. If that were the case, even under the state's theory, that decreasing in the sentence would result in the defendant being able to elect to a new sentencing provision, elect to the Class 2 sentencing range. That then creates, so by virtue of decreasing the sentence within the Class X range, all of a sudden the defendant becomes eligible for the Class 2 range, and it gets quite messy to put, to really apply in practice if the state's theory is correct. Conversely, if the simpler way to administer this would just be to simply say, if there is an ongoing proceeding, especially one that challenges the sentence, the defendant has the right to elect. And so for all these reasons, defense counsel performed efficiently by not asking to have his client have the right to elect to a new sentencing, or to the amended sentencing statute. And what's more, this deficient performance prejudiced his client. Strictly prejudiced standard is not an outcome determinative test. Mr. Brown did not have to show with 100% certainty that he would absolutely receive a sentence of less than nine years. He only needed to show a reasonable probability that he would get some time less than that. And that's shown here, first and foremost, by the fact that the sentencing range changed so dramatically. It went from six to 30, to three to 14. So you have the minimum sentence being cut in half, the maximum sentence being even less than half of what it originally was. And yes, nine years fits into both ranges. However, on the spectrum of Class X sentences, six to 30, nine years is in the lower quarter of possible sentences. Whereas if you take that same nine-year sentence on the Class II range, three to 14, well, then it's over the midpoint of possible sentences. What do we do with the fact, didn't the court, in hearing all of these arguments, say that one way or another, the court felt that nine years was an appropriate sentence under either regime? I don't believe that the court said it that directly. I believe that the court said that nine years would fall under both Class II and Class X. Is that appropriate? I thought that was the word you used. I didn't. I'm wrong. We'll check it then. How do we factor that in? When you say, you know, we've got to at some point talk about prejudice here. The sentence that he received was within both statutes, correct? Correct, correct. So what I have that the court said at the second motion to reconsider sentence was the state said that Mr. Brown would be eligible for an extended term sentence. The court said, yeah, so three to 14 either way. The prosecutor said, right, it's well within that range, and the court said, yeah. Eventually, the court then ruled on the motion and said that the nine-year sentence was appropriate. However, in making that ruling, the court did not apply the Class II sentencing range. And again, why there's prejudice here is because it can't be assumed that that sentencing range is meaningless to the judge. And that's where every sentence starts, is what can I give the defendant? What's the least? What's the most? And when you have a sentencing range that's, again, double what the minimum and maximum are here, that's prejudice. And besides that, we have the relative non-seriousness of the underlying conduct. This is driving a license revolt. That's normally a misdemeanor conviction. Now, we acknowledge Mr. Brown had many, many priors. Would you really want to argue this? I mean, how many times has he been convicted of the same crime? He had more than 14 prior convictions. For this same crime. Correct. And he was on bond for this same crime. Correct. Okay. But that doesn't change the underlying conduct, which is, again, driving a license revolt. So we do not need to show with 100 percent certainty he would absolutely get less than nine years. But there is a reasonable probability to that, especially when, again, the relative non-seriousness of this crime is recognized as well by the legislature in amending the Class X provision. So that these non-forceful felonies have been recognized to not deserve such harsh punishments. So for all those reasons, Mr. Brown was prejudiced by the lack of being able to elect to the Class 2 sentencing range. And for these reasons, the case should be remanded for resentencing. Alternatively, the case should be remanded for new post-plea proceedings. And this brings us to Issue 2 in the brief, which is that counsel failed to comply with his duty under 604D to properly amend the written motion. On remand, counsel filed a written motion raising one issue. And at the hearing on that motion, he abandoned that issue and goes forward on a completely separate basis. This left the defendant with zero issues preserved for appeal. And this was a failure to comply with Rule 604D. The appellate court disagreed. It held that the defendant orally presenting these claims to the trial court was sufficient to preserve them for appeal. That's contradicted by the plain language of 604D, which requires a written motion. Contradicted by existing case law. And telling me the state in its brief before this court has not even attempted to defend that position. The state has come up with an entirely different basis that the defendant's pro se motion preserved an issue for appeal. And so counsel could comply with 604D simply by relying on the pro se motion. But that argument should be rejected for three reasons. First, counsel on remand, after filing his own motion, never explicitly adopted the pro se motion. Second, even if counsel did adopt the pro se motion, it didn't preserve anything for appeal. It was a pre-printed, fill-in-the-blank motion that said, list all the reasons your sentence should be reduced. Nothing was filled in on any of those points. How many 604D petitions were filed in this case, or affidavits were filed in this case? How many certificates? There's two that I'm aware of. There's the certificate filed before remand, which did not comply with this court's holding in two signat. And I believe there was a petition, excuse me, the certificate filed after remand. There might have been another one in there, but I don't recall. How many times did this case go to the appellate court before the appellate opinion that we're looking at right now? One. So there was, there was, the counsel filed a deficient certificate under two signat. Our office filed a motion for summary remand. That was granted, and then this is the second appeal, from which the petition for leaf's appeal was granted. Counsel, given your client's prior history, would it have made a difference if counsel amended the motion? Well, there's, the problem here is that it left the defendant with nothing. Counsel's post plea, a post plea attorney, their most important job is to preserve issues for appeal. Counsel did not do that in this case. And it's so, it's not so much of what he, what issues are, excuse me, let me, let me say it like this. It wasn't so much like what didn't get argued, but that the fact that no issues were preserved. And that refutes the third 604D responsibility to properly amend the motion. And strict compliance is required with 604D. Therefore, new post plea proceedings are required. And the final point I'd like to point out in regards to the pro se motion is that counsel then, at the hearing on remand, argued about the statutory amendments, excuse me, that could not have been in the pro se motion. Because the pro se motion was filed well before these amendments became effective. So, counsel clearly include, made an oral argument that wasn't in the written motion. So, under People v. Winston and People v. Willis, that in and of itself requires remand for further proceedings. Counsel, I have another question about the 604D issue. So, ultimately, your client was allowed to argue that the sentence was excessive in front of the circuit court, right? Correct. And your position is that the client lost that opportunity in front of the appellate court due to the lack of an amendment, correct? My, our position is that Rule 604D requires an attorney to preserve issues for appeal. That if nothing is preserved, that counsel did not comply with 604D. And does it require an attorney to preserve meritless issues for appeal? Well, counsel, in this case, I mean, I just don't think that question applies here because counsel clearly believed it was meritorious. That's why he argued it twice to the trial court. So, he clearly thought something was worth pursuing. He just did not properly file the motion in a way that complied with 604D. Is there further questions? Thank you very much, counsel. Thank you. Counsel Frakely? Good morning, Your Honors, and may it please the Court. I am Assistant Attorney General Eldon Malamuth on behalf of the people. This Court should affirm the judgment because defendant has failed to demonstrate that his counsel was ineffective for acknowledging during the hearing on the motion to reduce a sentence that an amendment to the recidivism statute that became effective approximately 20 months after he was sentenced did not apply retroactively to him. Defendant has failed to establish that counsel performed efficiently because counsel was correct that the amendment did not apply retroactively. And defendant can also not establish prejudice because he cannot establish a reasonable probability that he would have been sentenced to less than nine years, even if the statute, the amendment had applied retroactively. Now, turning first to deficient performance. Defendant's position has seemingly evolved throughout the case. For the most part, his argument seems to have been that the statute applied retroactively to him and then should have been applied to him because of their ongoing proceedings. And then more recently, on the eve of this hearing last week, he filed a motion to set additional authority. And there's some suggestion also in this reply brief that actually the sentence is not the relevant judgment in this case. Both arguments are incorrect, even the one that he just recently raised for the first time in the reply brief. Now, returning to that argument, this court has just recently, in 2022, in the Wallace case, held that the judgment in a criminal case is the sentence. And that's been not only the holding of the recent Wallace case, it's been the holding of decades of this court's jurisprudence. Moreover, this case, this court has held time after time that the relevant time period that we look to is the sentence. So in 1945, in the Lyle case, this court held that an amendment could not apply to defendants because the law had become effective prior to the date of the actual sentence. And then more recently, just a few, seven years ago in Hunter, this case, this court stated that an amendment could not apply to defendants who were, quote, sentenced before the statute took effect. So this court has been crystal clear on the matter. The statutes are also clear on the matter. And excuse me for just quickly reading the statute, but 725 LCS 5-102-14 defines a judgment as an adjudication by the court. And it says, if the adjudication, excuse me, is that the defendant is guilty, it includes the sentence pronounced by the court. So the relevant judgment is the sentence. So now turning to the argument that was the argument below, and the defendant's opening brief, which had to do with retroactivity. Now this court should hold that the amendment did not apply retroactively to defendants. And that is because the General Assembly clearly stated its intent. So if the General Assembly clearly states its intent that a new law not apply retroactively, that must be given effect. And the first place we look to is the public act itself, the enacting legislation. And we, if that is clear in this case, if that is clear, then that's the end of the analysis. And in this case, that is perfectly clear. The General Assembly included a provision expressly delaying the implementation date of the provision at issue here, the amendment. And that was July 1, 2021. That was in section 99-999 of the public act. And this was, again, approximately 20 months after the defendant was sentenced. So that really is the end of the retroactivity analysis. We don't go any further than that. But if we did, if we had to turn to the section 4 of the statute on statutes, well, it's clear there too. As a general matter, substantive amendments do not apply retroactively. This is a substantive amendment because it made a substantive change to the relevant sentencing range. But we have an even more express and specific provision, which is the second sentence, which states that any amendment or new law that mitigates punishment can be applied to a judgment pronounced after the new law takes effect. This, again, was a sentence pronounced before the new law takes effect. So the amendment cannot apply retroactively too. But if the court had granted the post-trial motion, would the new statutory scheme for sentencing apply to the resentencing? Your Honor, in that case, that would be correct, yes, because he would be sentenced. His previous sentence would have been vacated. The judgment would have been vacated, and he would receive a new sentence, a new judgment. And then at that point, because the sentence would apply, because he would be receiving a new judgment, well, that would be a judgment that would take place after the law had become effective. So, and that goes to the whole point of what is the purpose of a motion to reconsider? The purpose isn't to provide a new sentencing hearing. The purpose of the hearing on a motion, the purpose of a motion to reconsider is to determine whether there has been an error in the matter, whether the sentence was proper at the time that it was pronounced. And if it was, then the motion to reconsider the sentence is denied. If there was some sort of error, well, then you would get a new sentencing hearing, and then certainly the new scheme would apply. But the fact that there's some review for error is irrelevant when there is no error, when we don't overturn, vacate the judgment. And the same is true for an appeal. If the defendants were to receive a new sentencing hearing because the matter was reversed on appeal, well, in that case, also the new sentencing regime would apply. And there's no meaningful difference between reviewing for error in the trial court and reviewing for error in the appellate court with respect to whether there has been a judgment pronounced, whether there has been a sentence pronounced. And so there simply is no retroactivity here, even under the Section 4 of the Statute on Statutes, even if we return to that. But again, we really stop the analysis because of the express delayed implementation in the statute itself. And so the defendant's argument that there were ongoing proceedings is irrelevant because we only apply things to ongoing proceedings if there's retroactive application of the amendments. So unless there are further questions on the deficient performance prong, I'll turn to the prejudice prong. In this case, there's no reasonable probability that the defendant would have been sentenced to anything less than, to a sentence lesser than nine years, even if counsel had argued that the amendment applied retroactively to him. Of course, there's no prejudice because the argument would have been rejected, as is incorrect. But even if the amendment had applied to him, there's no reasonable probability that the court would have issued, pronounced the sentence less than nine years. Now, when announcing the sentence, the court was quite clear about why it was doing so. It was stated that it was doing it because of the likelihood that the defendant was going to re-offend while out. And because the defendant was likely to re-offend while out, the court stated that a nine-year sentence was appropriate. Well, this didn't change in the intervening years. All the defendants, many, many violations, at least 15 of this particular offense, as well as a whole bunch of other offenses, including various forcible felonies. Defendants still had this extensive criminal history, and that didn't change based on which sentencing regime was being applied. Moreover, the court, and everyone agrees, that defendants still would have been subject to an extended term sentence. That sentencing range was seven to 14 years. And the court was quite clear that it was going to, that it took defendants' extensive criminal history into account. So certainly, the court would have applied the range of seven to 14 years. And the court looked at the defense counsel in asking for a lesser sentence, brought up the fact that there was a new sentencing regime, but the court said, noted that the extended term would apply, and said, so three to 14 either way. And then added that I think the sentence as issued was appropriate, I think it was proper, it was proper then, and I still feel real good about it right now. So there's really no question that the judge thought the nine-year sentence was appropriate based on defendants' criminal past, regardless of the sentencing. So defendant can show neither deficient performance nor prejudice. And so that has failed to demonstrate that counsel is ineffective. Now turning briefly to the 604D issue, in this case, there's no argument that the 604D certificate itself was not facially compliant. The argument is simply that counsel failed to preserve matters for appeal. That's not the case. So in 2019, there was a motion to reconsider the sentence. And defendant now argues that counsel didn't specifically adopt this motion. But defense counsel doesn't have to adopt in some sort of formal manner the motion. But defense counsel simply has to amend the motion, if necessary, to preserve the claims. Defense counsel didn't. Defense counsel instead went forward with the arguments in the motion, which was that the argument was that the sentence was excessive because it didn't take into account extenuating circumstances. Now certainly the motion could have been in more detail, but the argument was present in the motion, in the written motion, that it was, again, excessive because it didn't take into account extenuating circumstances. Then after all the procedural mischances in this case, that led to a new hearing in 2022, which, by the way, there was a hearing again then in 2000, which defendants simply wanted the matter to go up back on appeal. So the matter first came down to be on remand. And defendants said, well, I just want a new 604D certificate because the matter should just go up on appeal. So the peddler can hear this argument about the excessive sentence. At that point, though, there was some mistake in the trial court and a new order wasn't entered. And so the matter just sat for another long period of time, during which time the sentencing amendment became effective. In any event, at this point, the hearing, the eventual hearing in May 2022, counsel again stated, it was clear, we're going back to what we argued at the previous hearing. We're returning to that. Prosecutor asked, so are you stipulating the previous arguments? The answer is yes. And so we have a clear case of the prosecutor going forward with the motion to reconsider the sentence, which did preserve the matter for appeal. So there was no 604D violation here. Unless the court has any further questions, we would ask that this court affirm the judgment of the appellate court. Thank you. Thank you very much. Counsel in reply. Regarding issue number one, the state cites People v. Hunter. Just to be clear, People v. Hunter, the case was indisputably on appeal when the amendments became effective. So just as with Lyle, Hunter does not address the issue before this court. Second, the state relies extensively on the effective date of the amendment. However, this argument begs the question, what does perspective mean? The state assumes, and this is the unstated premise of their argument, that perspective has to be perspective based on the date of the sentence. Certainly, the state isn't contending it's perspective based on the date of the offense. So then why does it have to be perspective based on the date of the sentence? Why couldn't it be perspective based on the date the motion to reconsider sentence was denied? And the state is simply engaging in circular reasoning. They're assuming the conclusion that they want this court to draw as one of the premises of its argument. So we do need to go to section four of the statute on statutes. And here, there would not need to be a new sentencing hearing conducted, as I stated before, if the defendant were given the right to elect. The trial court could simply use the set of facts developed at the original sentencing hearing and apply them to the new sentencing range. Also, the state argues that there's really no difference between review by the trial court in a motion to reconsider sentence and appellate court review of the sentence. That's just not true. Appellate courts are not in the business of sentencing defendants. Appellate courts have a very differential review. I would contend, perhaps in practice, the most differential review of any standard of review in the state when looking at a sentence. Trial courts, that same thing doesn't apply. The trial judge heard the evidence. They saw the witnesses testify. They saw the trial in most cases. They've seen the defendant interact with various court personnel. None of those are on the cold record that the appellate court is reviewing. That's why it's so important that there are these ongoing trial proceedings. That's what makes the difference between this case and Hunter where there was a case pending on appeal. Turning to the prejudice prong, we can't simply assume  is meaningless to the trial court. The sentencing range, again, that's where every judge starts with the sentence. This sentence in this case was nine years, again, for driving while revoked. Obviously, the defendant's criminal history is long. We acknowledge that. But this was still a harsh sentence for the underlying conduct. And I would just like to point out again that the sentencing range, if Mr. Brown had been given the right to elect, was three to 14 years. The trial judge didn't know that he did not have to apply an extended term sentence. The court could have went down all the way to three years. So looking at that vastly different sentencing range, looking at the underlying conduct at issue, Mr. Brown has shown at least a reasonable probability of a different outcome. On the second issue, the problem with the pro se motion is not that it just did not, that it needed more details. No, the pro se motion had no details. The appellate court in this case stated that the pro se motion, quote, did not set forth any specific allegations. That's paragraph nine of the appellate court decision. So, therefore, it did not preserve anything. Counsel could not simply rely on this extremely pro forma motion to comply with Rule 604D. And my final point in regards of why further remand is necessary in this case. This case, it's really tough to know what counsel should have presented because post-plea counsel, quite frankly, did a sloppy job from as soon as he was appointed on this case. He filed a facially deficient certificate. He had, as opposing counsel mentioned, had a lot of confusion right after remand of what he was supposed to do with the case, how to get it back up on appeal. And then at the hearing on this motion, he raises issues that are not in the written motion. And, notably, counsel did not cite a single personal fact about Mr. Brown at the hearing on the motion to reconsider sentence. So, this was, again, a severe sentence for, again, a not very serious offense. Still a class two felony. We acknowledge that. He committed a class two felony. And it's in better hands. There's simply no telling what could have been done differently or what post-plea counsel could have done if this case were in better hands. And that's why we have strict support. So we don't have to guess about prejudice. We don't have to guess what could have happened. But we require strict compliance so that everything gets put on the record. And that's why counsel must, again, strictly comply with those requirements. If there are any further questions, Mr. Brown respectfully asks this court to either remand for resentencing or for new post-plea proceedings. Thank you. Thank you very much. This is agenda number four, number 129585, People of the State of Illinois versus Alvin Brown. Thank you both for your argument. The case will be taken under advisement.